# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELANI J. STEWART-WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:17-cv-01335 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

Plaintiff, now an eight-year-old minor, brought this medical malpractice action after she sustained a serious and permanent shoulder and nerve injury during her birth, allegedly due to negligent care provided by her mother's doctor. (Compl., ECF No. 1.) Because that doctor is "deemed" to be a federal employee for the purposes of the Federal Torts Claims Act, 28 U.S.C. § 2671, *et seq.* ("FTCA"), the United States filed a Motion to Dismiss this case as untimely under the FTCA's two-year statute of limitations. (Def.'s Mot. to Dismiss, ECF No. 5.) Plaintiff asserts that the FTCA's statute of limitations should be equitably tolled because Plaintiff, unaware that the doctor was to be treated as a federal employee, relied (erroneously) on the Pennsylvania Minors' Tolling Statute to timely bring her claim in state court. For the reasons that follow, Defendant's Motion is denied.

## I. Background

On November 9, 2009, D'Ericka Stewart gave birth to Plaintiff, Delani J. Stewart-Wilson, at Sharon Regional Hospital in Mercer County, Pennsylvania. (Compl., ECF No. 1, ¶ 11.) Plaintiff

1

suffered a brachial plexus injury[1] during birth, which has left her injured arm several inches shorter than her uninjured arm and has required multiple surgeries and types of physical therapy. (*Id.* ¶¶ 43–45.) The Complaint alleges that Plaintiff sustained this injury due to negligent medical treatment provided by John Gallagher, M.D. ("Dr. Gallagher"), to D'Ericka Stewart before and during the birth of Plaintiff, her minor daughter. (*Id.* ¶ 9.)

Plaintiff originally filed suit against Sharon Regional Hospital (then known as Christian H. Buhl Legacy Trust) and Dr. Gallagher in the Court of Common Pleas of Mercer County, Pennsylvania, on January 9, 2017. (*Id.* ¶ 3.) Asserting that Dr. Gallagher was a federal employee acting within the scope of his employment for purposes of the FTCA, the United States removed the action to this Court on January 26, 2017. *See* Notice of Removal, *Stewart-Wilson v. Christian H. Buhl Legacy Trust*, No. 17-cv-113 (W.D. Pa. Jan. 24, 2017), ECF No. 1. The United States then filed a motion to substitute itself as Defendant for Dr. Gallagher, which was granted, and a motion to dismiss on the basis that Plaintiff failed to exhaust her administrative remedies, which was also granted. (Def.'s Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 6, at 2.) Plaintiff then filed an administrative tort claim with the Department of Health and Human Services on or about February 14, 2017, as required under the FTCA, before filing the instant Complaint at this docket number on October 17, 2017. (*Id.*)

The United States filed the present Motion to Dismiss, ECF No. 5, on December 4, 2017, on the basis that Plaintiff failed to timely file her claim as is required under the FTCA. (Def.'s

---

[1] According to the Mayo Clinic, "The brachial plexus is the network of nerves that sends signals from your spinal cord to your shoulder, arm and hand. A brachial plexus injury occurs when these nerves are stretched, compressed, or in the most serious cases, ripped apart or torn away from the spinal cord." *Brachial Plexus Injury*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/brachial-plexus-injury/symptoms-causes/syc-20350235 (last visited Aug. 3, 2018).

Mot. to Dismiss, ECF No. 5, at 1.) The Motion was fully briefed, oral argument was held on February 22, 2018, and the Motion is ripe for disposition.

**II. Analysis**

The FTCA provides a limited waiver of sovereign immunity for claims against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b); *see also Santos ex rel. Beato v. United States*, 559 F.3d 189, 193 (3d Cir. 2009) (describing the FTCA). A plaintiff pursuing a claim under the FTCA must first file her claim with the administrative agency allegedly responsible for her injuries within two (2) years of the date the claim accrued, and then file suit within six (6) months of an administrative denial. 28 U.S.C. § 2401(b); *Sconiers v. United States*, No. 17-3440, 2018 WL 3543462, at *2 (3d Cir. July 24, 2018); *Santos*, 559 F.3d at 193. In this case, it is undisputed that Plaintiff's claim accrued on the date she was born: November 9, 2009.

Plaintiff acknowledges that she filed her claim in state court more than two years after her birth, but she argues that the FTCA's statute of limitations should be equitably tolled because she did not know that Dr. Gallagher was a federal employee for FTCA purposes. When filing her claim in state court, Plaintiff relied on the Pennsylvania Minors' Tolling Statute, 42 Pa. C. S. § 5533(b)(1), which tolls the state's statute of limitations for minors' claims until the claimant reaches the age of majority. If Plaintiff had been correct in her belief that Dr. Gallagher was not a federal employee, her claim would have been timely under state law; however, state law tolling statutes do not apply to the FTCA's limitations period, and thus the Pennsylvania tolling statute alone cannot save Plaintiff's claim. *Santos*, 559 F.3d at 193 (citing *Zeleznik v. United States*, 770 F.2d 20, 22 (3d Cir. 1985); *Sexton v. United States*, 832 F.2d 629, 633 n.4 (D.C. Cir. 1987) (citing

3

*Zeleznik*)). Accordingly, in the absence of equitable tolling, the FTCA would bar Plaintiff's claim as untimely.

Equitable tolling, where available, "can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has 'been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'" *Santos*, 559 F.3d at 197 (quoting *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999)). Supreme Court and Third Circuit case law is clear that in certain circumstances, the FTCA's limitations period can be equitably tolled. *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1638 (2015); *Santos*, 559 F.3d at 196–97 ("[W]e cannot in all circumstances preclude equitable tolling of the statute of limitations in FTCA actions because if we did so we unjustifiably would take upon ourselves the authority to narrow the congressional waiver of the sovereign immunity of the United States."). Because the limitations period under the FTCA is not jurisdictional, the Court believes that it is appropriate to treat the Defendant's Motion as one filed pursuant to Fed. R. Civ. P. 12(b)(6).[2]

In the Third Circuit, a plaintiff may face "sufficiently inequitable circumstances" that justify equitably tolling a statute of limitations in three situations: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Id.* at 197 (quoting *Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005)). However, the burden for a plaintiff seeking to equitably toll a statute is a heavy one, as our Court of Appeals cautioned in *Santos*:

> But a plaintiff will not receive the benefit of equitable tolling unless she exercised due diligence in pursuing and preserving her claim. The principles of equitable tolling thus do not extend to "garden-variety claims of excusable neglect." The remedy of equitable tolling is extraordinary, and we extend it "only sparingly."

---

[2] In this Circuit, the statute of limitations defense can be raised via a motion to dismiss. *Robinson v. Johnson*, 313 F.3d 128, 135 & n.3 (3d Cir. 2002).

4

> It is especially appropriate to be restrictive with respect to extension of equitable tolling in cases involving the waiver of the sovereign immunity of the United States. The Supreme Court made that point clear when it indicated that inasmuch as the FTCA "waives the immunity of the United States, . . . in construing the [FTCA's] statute of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended," and the Court should not "assume the authority to narrow the waiver that Congress intended."

559 F.3d at 197–98 (citing *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 96 (1990); *Hedges*, 404 F.3d at 751; *United States v. Kubrick*, 444 U.S. 111, 117–19 (1979)) (internal citations omitted).

Plaintiff argues that the second situation applies in this case—that she "in some extraordinary way has been prevented from asserting" her rights,[3] *Santos*, 559 F.3d at 197—because of the difficulty in ascertaining Dr. Gallagher's status as a federal employee. The crux of Plaintiff's argument is as follows: Dr. Gallagher, although apparently employed by the Primary Health Network (a federally qualified health center), outwardly appeared to be a non-federal employee because he delivered Plaintiff at Sharon Regional Hospital (a non-federal facility) and he was listed as an Obstetrics and Gynecology doctor on Sharon Regional Hospital's website. (Pl.'s Br. in Opp'n to Def.'s Mot., ECF No. 12, at 8.) Due to Plaintiff's counsel's experience with medical malpractice cases, he was aware that Sharon Regional Hospital was a non-federal facility, and because nothing else tipped him off that Dr. Gallagher was a deemed federal employee, he says that he relied on the Pennsylvania Minors' Tolling Statute to wait to file Plaintiff's medical malpractice claim until the extent of Plaintiff's injuries became clear. (*Id.* at 8–9.)

Plaintiff and her counsel further assert that they each exercised due diligence in pursuing and preserving her claim, as is required to equitably toll the FTCA. Plaintiff's counsel stated at

---

[3] There is no allegation that the United States or its agents actively misled Plaintiff or her counsel regarding Plaintiff's cause of action or that Plaintiff timely asserted her rights mistakenly in the wrong forum; thus, the first and third categories of "sufficiently inequitable circumstances" identified in *Santos* do not apply to this case. *See Santos*, 599 F.3d at 197.

5

oral argument[4] that Plaintiff's mother retained him to represent Plaintiff shortly after Plaintiff's birth. Plaintiff further asserts that her counsel requested medical records over twenty (20) times from nine (9) different providers, resulting in thousands of pages of medical records. (Pl.'s Br. in Opp'n, ECF No. 12, at 7–8.) The record reflects that Plaintiff's counsel began requesting these records within the FTCA's two-year statute of limitations. (*See* Medical Records, Pl.'s Ex. 1, ECF No. 19, at 4 (letter dated December 23, 2010, requesting medical records).) According to Plaintiff's counsel, "[n]ot a single medical record obtained indicated to counsel that Defendant's agent[, Dr. Gallagher,] was employed by a federally qualified health center." (Pl.'s Br. in Opp'n, ECF No. 12, at 8.) Further, Plaintiff's counsel stated that he acted in accordance with his usual practice and in the best interests of the minor Plaintiff by waiting to file Plaintiff's claim until the extent and nature of Plaintiff's injuries were known.[5] (*Id.* at 9.)

As Plaintiff's counsel points out, our Court of Appeals addressed a strikingly similar case in *Santos*. There, the plaintiff's (Santos, a nine-year-old minor) counsel relied on the Pennsylvania Minors' Tolling Statute to file a medical malpractice claim in Pennsylvania state court two years and five months after the plaintiff's cause of action accrued. *Santos*, 559 F.3d at 191. The plaintiff subsequently learned that the allegedly negligent parties were federal employees, and her claim was therefore untimely under the FTCA. *Id.* at 192. Santos argued that the FTCA's statute of

---

[4] Notably, both counsel at oral argument made a number of factual assertions that are not backed up in the record now before the Court, either by way of authenticated documentary evidence or testimony. The Court also made a number of observations and posed questions based on its real-time examination of various relevant websites. The Court points that out not to criticize counsel as to their assertions or research, since the Court found their respective representations very helpful and takes them at face value, but only to note that in ruling on this 12(b)(6) Motion, the Court is confronted with the pleading before it (the Complaint), which it may consider, and also with a number of asserted or accessible facts that are not in an evidentiary record. That will be important later in this Opinion.

[5] As Plaintiff's counsel stated in his brief, brachial plexus injuries "result in a spectrum of disabilities which can range from virtually full recovery (which takes 2 years or more ordinarily) to profound disfigurement and disability resulting from limb length discrepancy, which [Plaintiff] suffers from. Damage experts can, therefore, rely on fact rather than speculation [if a plaintiff waits to file her claim]." (Pl.'s Br. in Opp'n, ECF No. 12, at 9.)

6

limitations should be equitably tolled because she did not know that the allegedly negligent healthcare providers had been deemed federal employees. *Id.* York Health, the healthcare facility where Santos was treated, outwardly appeared to be a private corporation, and nothing on York Health's website (or other publicly available sources) indicated that the facility and its employees were federal employees covered by the FTCA, although its federal funding was revealed. *Id.* at 191, 203. Santos asserted, similar to Stewart-Wilson's assertions in this case, that she faced extraordinary circumstances that prevented her from timely filing her claim due to her reasonable diligence in pursuing her claim through her counsel, the difficulty in determining that her healthcare providers had been "deemed" federal employees, and the approximately eleven-year difference between the state law and FTCA limitations periods because of the Pennsylvania tolling statute. *Id.* at 194.

Identifying the "trap" to which Santos (and now arguably Stewart-Wilson) fell victim, our Court of Appeals stated:

> [T]he Department of Health & Human Services has created a potential statute of limitations trap in states [that] may provide a longer period of time than the FTCA to file a complaint. The number of cases in which the United States has sought to take advantage of this trap suggests that it is aware of the consequences of its failure to disclose the material facts of federal employment by doctors who might reasonably be viewed as private practitioners.

*Id.* at 202–03 (quoting *Valdez v. United States*, 518 F.3d 173, 183 (2d Cir. 2008)). In light of this "trap," Santos's diligence in otherwise pursuing her claim, and the Court's conclusion that "[o]verall . . . as far as we can see from the record, . . . Santos and her counsel had no reason to inquire as to the possible federal status of [her healthcare providers]," *id.* at 202, the Third Circuit determined that Santos had faced sufficiently inequitable circumstances to justify equitably tolling the FTCA, and the Court reversed the grant of summary judgment in the Government's favor. *Id.* at 203.

7

The United States contends that despite the holding in *Santos*—and, in fact, because of it—Plaintiff and her counsel in this case have failed to demonstrate that they employed the requisite diligence for the Court to apply the extraordinary remedy of equitable tolling. (Def.'s Reply Br., ECF No. 16, at 5–7.) As an initial matter, Plaintiff's counsel acknowledges that two (2) of the twelve (12) pages of medical records in the current record here referenced (at the bottom of the page) "Primary Health Network," an entity that as it turns out is a federally funded facility and was the one that actually employed Dr. Gallagher. (*See* Medical Records, Pl.'s Ex. 1, ECF No. 19, at 16–17.) According to the United States, this alone was sufficient to put Plaintiff's counsel on notice that Dr. Gallagher was affiliated with Primary Health Network, and counsel should have then consulted the Health Resources and Service Administration's (HRSA's) public database of federally funded health centers to determine Dr. Gallagher's "deemed" federal status. Plaintiff's counsel conceded during oral argument that he did not consult this database. At oral argument, the United States also acknowledged that as of that date, that website was "down for construction" but stated that there was a backup phone number that a medical malpractice "web surfer" could call to ascertain that same information. Further, the United States argues that federally funded health centers are not obscure or infrequent,[6] and any and every member of the medical malpractice bar "should know enough to consult [the HRSA's] website when approached by a prospective client." (Def.'s Reply Br., ECF No. 16, at 6 (citing *Blanche v. United States*, 811 F.3d 953, 963 (7th Cir. 2016)). Indeed, the United States argues that by identifying the "statute of limitations trap" in *Santos*, the Third Circuit put all plaintiffs' attorneys on notice that they must determine that a potential defendant in any medical negligence case is not a deemed federal employee before relying on state tolling statutes. Thus, according to the United States, equitable tolling may have

---

[6] Although in *Santos*, the Court concluded that the provider's "federal status, if not covert, was at least oblique." 559 F.3d at 202–03.

8

been justified in *Santos*, but now that this statute of limitations issue is (as it posits) widely known (in large part because of *Santos*), similar circumstances can no longer be considered "extraordinary" so as to warrant equitable tolling. (*Id.* at 6.)[7]

Whether *Santos*' treatment of this "deemed employee" issue should be viewed as a sort of fire bell in the night for all plaintiffs' medical malpractice counsel has been a big issue in some federal courts of appeal, but as of now, not yet in ours. In *Blanche*, 811 F.3d 953, the Seventh Circuit drew a pretty bright line in not applying equitable tolling in a setting similar to this one, focusing on the existence of the federal website and holding that the failure of a plaintiff's counsel to search that website was in and of itself a bar to the application of the doctrine. *Id.* at 962–63. The First Circuit took a similar approach in *Sanchez v. United States*, 740 F.3d 47 (1st Cir. 2014). In *Sanchez*, the court recognized that the federal government had in fact created and maintained a "trap for the unwary" by virtue of the doctrine of "deemed" federal employees coupled with the lack of any obligation on the part of those employees or their putative employers to do anything to put their patients or the rest of the world on notice of that particular status. *Id.* at 56. But, the *Sanchez* court also concluded that the burden was on the plaintiffs' medical malpractice bar to do whatever checking was necessary, in every case, to ascertain whether the likely defendant(s) in the cases they contemplated bringing were or were not "deemed" federal employees. *Id.*

The Second Circuit has taken a much different approach. In *Phillips v. Generations Family Health Center*, 723 F.3d 144 (2d Cir. 2013), the district court had concluded that it was constrained by Second Circuit precedent, *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135 (2d Cir. 2011), to not apply equitable tolling in a situation involving a "deemed" federal employee where, as here,

---

[7] For all that *Santos* said and held, such a warning was not part of the verbiage chosen by our Court of Appeals. It did not purport to state that the application of equitable tolling in a "deemed" federal employee medical malpractice case was a "one and done" event, available to the *Santos* plaintiff only.

9

the plaintiff's lawyer had not done a search of available online resources to ascertain whether a "deemed" federal defendant was involved, relying instead on the fact that there were no external indicia of such status as to such defendants. *Phillips v. Generations Family Health Ctr.*, No. 11-cv-1752, 2012 WL 3580532, at *9 (D. Conn. Aug. 17, 2012). In vacating the district court's decision and remanding the case for further proceedings, the Second Circuit in *Phillips* noted that it had previously observed that the government's failure to disclose the fact that involved healthcare providers were considered to be federal employees might trigger equitable tolling, concluding that the United States was taking advantage of a trap of its own making. 723 F.3d at 151, 155–56. It also declined to announce a per se rule that in every case, the failure of a plaintiff's lawyer to search a federal website or call a federal hotline was a bar to the application of equitable tolling. *Id.* at 152–53. Instead, it held that the district courts were to consider all of the relevant facts and circumstances. These specifically included whether there were facts present that would demonstrate that the plaintiff should have known to investigate the issue in the particular case, all in order for the district court to exercise its discretion to determine whether the plaintiff and her lawyer were sufficiently diligent. *Id.* Among the factors to be considered were the labeling of the healthcare providers both publicly and in their dealings with patients,[8] the information about the providers otherwise available, the experience of the involved plaintiff's lawyer in other circumstances involving deemed federal employees, and the actual availability of information about the status of the involved providers in the relevant timeframe from the federal government. *Id.* at 154. In the Second Circuit, it is plainly a "totality of the circumstances" test. *Id.*

---

[8] At oral argument in this case, the Court referenced a website called the "Wayback Machine," https://archive.org/web, which allows users to search to see what particular websites looked like at various dates in the past. In response to this point, counsel for the United States acknowledged that there was not a "big neon sign" that said that Primary Health Network was a deemed federal facility at the relevant time (the two years following Plaintiff's birth).

10

From where this Court sits, it concludes that if pressed to do so, our Court of Appeals would adopt a standard more in line with that applied by the Second Circuit in *Phillips*, rather than the brighter line chosen by the First and Seventh Circuits. This is because in *Santos*, our Court of Appeals considered all of the facts of record relative to the actions actually taken (and not taken) by plaintiff's counsel. It considered the precise nature of the information about the status of the defendants available from federal and other sources, as well as the other actions taken by the plaintiff and her counsel in investigating and pursuing the claim. It then considered all of those factors in the context of one another. For instance, the *Santos* Court considered the outward appearance and labeling of the involved clinic, the degree to which the plaintiff's counsel received and reviewed medical records and what they said, the plaintiff's counsel's retention of experts, and his visitation to the involved clinic. 559 F.3d at 200–01. Further, the Court examined and considered the content of the then-available federal website as to federal funding of the provider, along with the Government's assertions about other website content. *Id.* at 202. In sum, the *Santos* Court carefully examined the panoply of actions and inactions of the *Santos* plaintiff and her counsel. And to be sure, it also did not purport to announce the post-*Santos* "everybody is now on notice" rule that the United States suggests the Court should apply here. The long and short of it is that this Court concludes that in line with *Santos*, it is obligated to consider the totality of the circumstances present in making the equitable tolling assessment. But, from the Court's perspective, the factual record before the Court at this point does not allow the Court to do that. Here's why.

The United States has moved to dismiss on statute of limitations grounds. It has not yet answered the Complaint. That means that all the Court has before it is the Complaint (ECF No. 1), the Motion papers (ECF Nos. 5, 6), the response thereto (ECF Nos. 11, 12), and the assertions made

11

at oral argument. While the Plaintiff has the obligation to advance the equitable tolling argument, the Court concludes that she has done so, at least to the degree a litigant can at the Motion to Dismiss stage. (*See* Pl.'s Br. in Opp'n, ECF No. 12, at 3.) And, the United States has fairly raised the statute of limitations defense, based on the dates of record as shown in the pleadings and the docket entries as to when this case was filed in state court, dates which facially show that the claims asserted would be time barred under the FTCA. (Def.'s Br. in Supp., ECF No. 6, at 4.) But here are some of the "facts" that are not before the Court as actual *record* facts: was the HRSA public database that the United States relies on up and running during the relevant time periods when the United States says that the Plaintiff should have consulted it, and what did it reveal as to the providers here? Was the federal telephone hotline up and running, and what would have been reported about these providers had it been consulted? Had the Plaintiff's counsel or his law firm been involved in prior litigation with these providers, or any other providers who were "deemed" federal employees? Are there reported cases involving these providers which would have revealed their "deemed" federal status? Why, exactly, did the Plaintiff's lawyer not dig further into the status of the providers? What identifying information about the status of the providers could have been (and actually was) gleaned directly from them and/or their public pronouncements, such as their websites, letterhead, and the like? More directly, short of applying the bright-line rule espoused by the United States, what indicia is there in the record of necessary diligence, or lack thereof, in terms of the ability for counsel to access, and then assess, the "deemed" federal status of the healthcare providers here?[9]

---

[9] These are the issues examined to a degree in *Santos*, and then expressly in *Phillips*. On remand in *Phillips*, the district court allowed the parties to develop a record on these issues, and on a motion for summary judgment, it denied the application of equitable tolling. The record adduced revealed that the plaintiff's lawyer's firm had previously encountered an identical situation, and there was a prior case reported on Westlaw involving the "deemed" federal status of the same healthcare provider involved in *Phillips*. On appeal, that decision was affirmed. *Phillips v. Generations Family Health Ctr.*, 657 F. App'x 56, 59 (2d Cir. 2016).

Plaintiff and her counsel are correct that the facts of this case align very closely to the facts in *Santos*—and therein lies a problem for Plaintiff. In *Santos*, our Court of Appeals (1) identified the potential statute of limitations "trap" between medical malpractice cases involving minor plaintiffs brought under state law and those brought under the FTCA; (2) reaffirmed that a plaintiff cannot rely on the Pennsylvania tolling statute to toll the FTCA's statute of limitations; and (3) highlighted the reality that it is not always facially obvious when a healthcare provider is in fact a federal employee covered by the FTCA. The United States is also correct that the decision in *Santos* can be read as putting plaintiffs (and their lawyers) on notice that part of diligently pursuing a medical negligence claim may ordinarily require making an affirmative effort to determine whether any defendant healthcare provider is a deemed federal employee, and that in any event plaintiffs and their counsel may not rely on a state's minors' tolling statute where a deemed federal employee is involved.

In this case, Plaintiff's counsel admitted that he did not use the HRSA's public database of FTCA-deemed facilities, and admitted that he did not notice the references to "Primary Health Network" at the bottom of two out of only twelve pages that made up the records of Plaintiff's birth that were submitted to the Court (presumably out of many other health records that were not submitted). But we also don't know from the record what information was actually available from those federal sources and providers on this topic at the relevant time (within two years of the date of Plaintiff's birth) had he so looked. Could Plaintiff's counsel have identified Dr. Gallagher's status by searching for Dr. Gallagher by name or by searching "Sharon Regional Hospital," or would he have had to know to search "Primary Health Network"? Further, we don't know what quantum of information would have been available to Plaintiff's counsel from the providers themselves about those providers when this case was being investigated by counsel. We also do

13

not have record facts as to the experience of Plaintiff's counsel in cases involving deemed federal employees in the healthcare setting, yet another factor considered essential by the court in *Phillips*. *See Klepack v. United States*, No. 13-cv-124, 2014 WL 12602873, at *7–8 (N.D. W. Va. Apr. 4, 2014) (applying equitable tolling doctrine after considering a variety of factual circumstances as to diligence).

Like the courts in *Santos* and *Phillips*, this Court is confronted with the following which would weigh in favor of applying equitable tolling: (1) Plaintiff and her mother seemingly did everything right—Plaintiff's mother obtained representation by experienced counsel shortly after Plaintiff's birth, and well within the FCTA's two-year statute of limitations; (2) the reason her counsel says he waited to file the claim was to allow Plaintiff to grow to determine the extent of the injury and resultant damages (and whether suit should be filed at all)—apparently in line with that attorney's customary and salutary practice; and (3) the federal government, writ large, is well aware of this potential "trap" set by the FTCA's statute of limitations,[10] but it has not done much of anything to fix the problem beyond a website that seems to be persistently "down for construction."[11] Indeed, if the Third Circuit's decision in *Santos* put plaintiffs on notice of the situation now presented in this case, it certainly also put the government on notice of the problem as well—a problem that the United States has created, and post-*Santos* hasn't sought to really mitigate in any straightforward way. For instance, as the courts in both *Phillips* and *Sanchez* observed, this situation would be far clearer and the result more just for all involved if the

---

[10] The Court casts no criticism on the Government's lawyer making the argument he made. Absent a decision by the United States to waive the statute of limitations defense, likely one residing way above his pay grade, he was doing his job in making it.

[11] Notably, as of the date of this Opinion, the Deemed Entity Search feature on the HRSA website (which was down on the date of oral argument in this matter, February 22, 2018) remains not operative. *See Search Current Deemed Entities*, Health Res. & Servs. Admin., https://bphc.hrsa.gov/ftca/healthcenters/ftcahcdeemedentitysearch.html (last visited Aug. 3, 2018).

14

Government required providers to plainly and openly identify at the time of treatment that they are healthcare professionals who are deemed to be federal employees for FTCA purposes. As these courts observed, the federal government appears quite content with the current level of visibility (or perhaps more accurately, opaqueness) of deemed federal employee status.

But there is another side to the coin. Weighing against the application of equitable tolling is the reality that federal law is quite clear that the FTCA is a limited waiver of sovereign immunity and equitable tolling is an extraordinary and rarely granted form of relief, the fact that the burden is ordinarily on a plaintiff to demonstrate that she satisfies the requirements necessary to allow a court to equitably toll the statute of limitations, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), and the concession by Plaintiff's counsel that he did not do a search of federal websites or related sources to ascertain the status of the involved providers. *See Hawver v. Nestorak*, No. 13-11068, 2017 WL 2213571, at *6, 7 (E.D. Mich. May 19, 2017) (declining to apply equitable tolling doctrine after considering a number of factors, including the failure to review federal website). Along with this is the recognition that the *Santos* Court by its precedential opinion has put the Bar on some level of notice of the FTCA deemed-employee landmine that may exist in every medical malpractice case.

The Court concludes that on the record before it, it cannot fully assess the totality of the relevant circumstances that would govern the application (or not) of the equitable tolling doctrine to this case. The necessary decision of this Court today is that the Motion to Dismiss of the United States is denied, but without prejudice to its assertion of the statute of limitations defense in a motion for summary judgment. In light of the fact that this would be a threshold issue, the Court will direct that the parties engage in phased discovery for a period of ninety (90) days focused only on matters bearing on the statute of limitations and the assertion of the equitable tolling doctrine,

at the conclusion of which the parties may file an initial motion for summary judgment as to such matters, all without prejudice to the position of all parties as to further discovery and motions practice should this case remain to be litigated in this Court. Accordingly, Defendant's Motion to Dismiss is denied without prejudice.

## III. Conclusion

For the reasons stated in this Memorandum Opinion, Defendant's Motion to Dismiss, ECF No. 5, is DENIED without prejudice.

Mark R. Hornak
United States District Judge

Dated: August 3, 2018

cc: All counsel of record