# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DELANI J. STEWART-WILSON, )
A Minor, by her natural mother and Legal )
Guardian, D'Ericka Stewart, )
) 2:17-cv-01335
        Plaintiff, )
)
        v. )
)
UNITED STATES OF AMERICA, )

        Defendant.

## OPINION

**Mark R. Hornak, Chief United States District Judge**

In this medical malpractice action, Defendant United States of America argues that Plaintiff Delani Stewart-Wilson's claim is untimely under the Federal Torts Claims Act, 28 U.S.C. § 2671, *et seq.* ("FTCA"). This Court previously denied Defendant's motion to dismiss, ECF No. 5, which relied on the same timeliness argument presented here, on the basis that factual questions remained as to whether Plaintiff was entitled to equitable tolling. Those questions have now been answered, Plaintiff is not entitled to equitable tolling, and Defendant's Motion for Summary Judgment, ECF No. 25, will be granted.

I. **Background**[1]

   A. **Factual and Procedural History**

On November 9, 2009, D'Ericka Stewart ("Ms. Stewart" or "Plaintiff's mother") gave birth to Plaintiff at Sharon Regional Hospital ("Sharon Hospital") in Mercer County, Pennsylvania, under the care of John Gallagher, M.D. ("Dr. Gallagher"). (Def.'s Statement of Material Facts ("SMF") ¶ 1, ECF No. 27; Pl.'s Counter Statement of Material Facts ("CSMF") ¶ 1, ECF No. 32.) During the birth, Plaintiff suffered a brachial plexus injury,[2] which allegedly caused permanent and irreparable harm to her right shoulder and arm. (Def.'s SMF ¶ 10; Pl.'s CSMF ¶ 11.) Nearly seven years later, Plaintiff, by her mother and legal guardian, initiated a medical malpractice suit against two defendants, Dr. Gallagher and Sharon Hospital, in state court on September 29, 2016. (Compl., ECF No. 1 ¶ 9; Def.'s SMF ¶ 2; Pl.'s CSMF ¶ 2.) Plaintiff asserts that the deliberate delay in initiating this action was a result of her Counsel's reliance, consistent with Plaintiff's Counsel's custom and practice, on Pennsylvania's Minors' Tolling Statute, 42 Pa. C.S. § 5533(b)(1).[3] (Pl.'s CSMF ¶ 72.)

At all relevant times to the events at issue here, Dr. Gallagher was employed by Primary

---

[1] Plaintiff's Counter Statement of Material Facts ("CSMF") is out of compliance with this Court's Local Rules. Pursuant to LCvR 56.C.1, the nonmoving party shall *respond* to the moving party's concise statement of facts "admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material," and then "set[] forth in *separately numbered paragraphs* any other material facts that are allegedly at issue, and/or that the opposing party asserts are necessary for the Court to determine the motion for summary judgment." LCvR 56.C.1 (emphasis added). Plaintiff did not do so, at times copying and pasting Defendant's Concise Statement of Material Facts (instead of simply stating "admitted") and at other times throughout her CSMF setting forth new or different facts (without using separately numbered paragraphs). Therefore, the Court undertook the task of going through both sets of statements, ECF Nos. 27 and 32, to ascertain what is disputed. However, many facts put forth by Defendant were left unaddressed by Plaintiff and are thus deemed admitted. *See Imhoff v. Temas*, No. 14-cv-44, 2016 U.S. Dist. LEXIS 29330, at *11 (W.D. Pa. Feb. 1, 2016) ("To the extent Defendant put forth statements of facts to which Plaintiff failed to respond, those facts are deemed admitted."). To the extent the Court provides a citation solely to Defendant's Statements of Material Fact, it is because Plaintiff failed to response to that statement, and it is thus deemed to be an admission.

[2] According to the Mayo Clinic, "The brachial plexus is the network of nerves that sends signals from your spinal cord to your shoulder, arm and hand. A brachial plexus injury occurs when these nerves are stretched, compressed, or in the most serious cases, ripped apart or torn away from the spinal cord." *Brachial Plexus Injury*, Mayo Clinic,

Health Network, a deemed entity that was eligible for FTCA malpractice coverage, which made Dr. Gallagher a "deemed" federal employee under the FTCA.[4] (Def.'s SMF ¶¶ 6, 11.) Although Ms. Stewart visited Dr. Gallagher at Primary Health Network's offices for her pre-natal care,[5] Plaintiff Counsel's investigation focused on the delivery and birth of Plaintiff—which occurred at Sharon Hospital—and Plaintiff's injuries thereafter. (Def.'s SMF ¶ 48; Pl.'s CSMF ¶ 66.) Plaintiff's initial state court complaint pled that Dr. Gallagher was an agent or employee of Sharon Hospital, as he was listed as an Obstetrics and Gynecology doctor on Sharon Hospital's website. (Pl.'s Ex. 1-Compl. filed in Mercer Cty. Ct. of C.P. ¶¶ 4–5, ECF No. 31-1.) Consequently, the state court complaint made no mention of Primary Health Network or any events prior to Ms. Stewart's arrival at Sharon Hospital to give birth. (*See* Pl.'s CSMF ¶¶ 25–27.)

On January 24, 2017, the United States removed that case from state court to this Court and moved to substitute the United States for Dr. Gallagher on the basis that Dr. Gallagher was at all times working within the scope of employment with the United States of America. (Case No. 17-cv-113, at ECF No. 2.)[6] The Court granted that motion. (*Id.* at ECF No. 11.)

---

https://www.mayoclinic.org/diseases-conditions/brachial-plexus-injury/symptoms-causes/syc-20350235 (last visited Apr. 29, 2019).

[3] Pennsylvania's Minors' Tolling Statute tolls a minor's claim until the claimant reaches the age of majority. (Op., ECF No. 20, at 3, *available at* 2018 U.S. Dist. LEXIS 130813.)

[4] Attached to Plaintiff's Complaint, ECF No. 1, is a Certification of Scope of Employment. (ECF No. 1-2.) The Certification, dated January 23, 2017, is signed by then-Acting United States Attorney for the Western District of Pennsylvania and certifies that John Gallagher, M.D., was acting within the scope of his employment as an employee of the United States at the time of the incident for purposes of the Public Health Service Act, 42 U.S.C. § 201 *et seq.* (*Id.*) Plaintiff does not dispute Dr. Gallagher's status as a deemed federal employee. "Insofar as the United States consents to be the sole defendant in matters when its employee, acting within the scope of his employment, commits a negligent act, 28 U.S.C. § 1346(b)(1), this determination . . . does not require additional discussion." *Brown v. Camden Cty. Counsel*, No. 10-1098, 2010 U.S. App. LEXIS 9826, at *4–5 n.2 (3d Cir. May 13, 2010).

[5] Ms. Stewart's medical records reveal that she was treated at the Primary Health Network offices in Sharon, PA, by Dr. Gallagher prior to and subsequent to her November 9, 2009, delivery. (Def.'s SMF ¶¶ 42–43, 47–48.)

[6] The case was initially docketed in this Court at *Stewart-Wilson v. Christian H. Buhl Legacy Trust*, No. 17-cv-113 (W.D. Pa. Jan. 24, 2017). Defendant filed a motion to dismiss the complaint (*Id.* at ECF No. 12), to which Plaintiff

3

On November 20, 2018, the United States filed a motion to dismiss this action on the basis that Plaintiff failed to timely file her claim within the two-year statute of limitations as is required under the FTCA.[7] (ECF No. 5.) It was undisputed at that time (and remains undisputed now) that Plaintiff's claim accrued on the date she was born—November 9, 2009—and that Plaintiff had filed her claim in state court more than two years after the birth. (Op., ECF No. 20, at 3.) Plaintiff responded with the same argument that it makes now: Dr. Gallagher's FTCA status was sufficiently concealed from Plaintiff and Plaintiff's Counsel during their diligence investigation of this case, so the Court should apply equitable tolling to rescue Plaintiff's otherwise time-barred claim. The Court denied Defendant's motion to dismiss, concluding that it could not "fully assess the totality of the relevant circumstances that would govern the application (or not) of the equitable tolling doctrine to this case." (Op. at 15; Order, ECF No. 21.) The Court, therefore, ordered the parties to engaged in specific discovery "on matters bearing on the statute of limitations and the assertion of the equitable tolling doctrine . . . ." (Order, ECF No. 21.)

---

did not respond. (*Id.* at ECF No. 15, at 3.) The Court granted Defendant's motion, concluding that Plaintiff had not yet exhausted her administrative remedies. (*Id.* at ECF No. 15.) The case was dismissed without prejudice to Plaintiff filing a new complaint once such deficiency was cured and remanded the case as to the other defendant (Christian H. Buhl Legacy Trust f/k/a Sharon Hospital) to state court for lack of subject-matter jurisdiction as to that defendant. (*Id.* at ECF No. 15, at 5, adopted by Order, ECF No. 16.) Plaintiff has exhausted her administrative remedies. (Pl.'s CSMF ¶ 9; Def.'s SMF ¶ 9.) This case was then re-filed at this docket number and caption on October 17, 2017. (Def.'s SMF ¶¶ 3–10; Pl.'s CSMF ¶¶ 7–11.)

[7] As explained in this Court's prior Opinion, "[t]he FTCA provides a limited waiver of sovereign immunity for claims against the United States 'for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" (Op. at 3 (quoting 28 U.S.C. § 1346(b)).) A plaintiff pursuing a claim under the FTCA must first file her claim with the administrative agency allegedly responsible for her injuries within two (2) years of the date the claim accrued, and then file suit within six (6) months of an administrative denial. 28 U.S.C. § 2401(b); *Sconiers v. United States*, No. 17-3440, 2018 WL 3543462, at *2 (3d Cir. July 24, 2018); *Santos ex rel. Beato v. United States*, 559 F.3d 189, 193 (3d Cir. 2009).

### B. Fruits of Discovery: Record on Defendant's Motion for Summary Judgment

Plaintiff's Counsel acknowledges that his investigation of this case was limited in scope "to the time when Dr. Gallagher's alleged negligence occurred." (Pl.'s CSMF ¶ 12.) Because Plaintiff's Counsel was operating under the belief that the alleged negligence was related solely and entirely to the labor and delivery of Plaintiff, he says that his investigation was temporally limited to "the time at which Plaintiff presented to Sharon Hospital to give birth," which occurred on November 9, 2009, and he only requested medical records generated between November 1, 2009, and the present. (*Id.* ¶¶ 12–16.) Those record requests were made within the two-year FTCA statute of limitations.[8]

Of the medical records that Plaintiff's Counsel collected during the two-period between Plaintiff's birth and the expiration of the FTCA's statute of limitations, two pages contained the words "Primary Health Network," and this phrase was located in the footer of each page, along with Dr. Gallagher's name and contact information. (Pl.'s CSMF ¶¶ 22–23 (referencing ECF No. 31-6).) A copy of one of these pages is attached to this Opinion as Exhibit A.[9]

Plaintiff's Counsel continued to request Plaintiff's medical records, collecting medical records relevant to Plaintiff's birth and her mother's delivery and available records relating to Plaintiff's damages. (*Id.* ¶ 66.) But Plaintiff's Counsel never requested Ms. Stewart's medical records from Primary Health Network, where Ms. Stewart was treated prior to delivering Plaintiff, nor did he request any records from any healthcare provider that identified a responsive date range earlier than November 1, 2009. (*Id.* ¶¶ 20, 21; Def.'s SMF ¶ 42.)

---

[8] Plaintiff's Counsel requested said records from Sharon Hospital on April 14, 2010, December 23, 2010, and January 12, 2011. (CSMF ¶¶ 13, 16, 17.)

[9] The medical notations on this exhibit are irrelevant to the issues presented here and thus redacted.

5

As explained in detail below, it is undisputed that Plaintiff's Counsel performed no investigation of Primary Health Network within the two-year FTCA statute of limitations. (Pl.'s CSMF ¶¶ 25–31.) With respect to Dr. Gallagher's employment status, Plaintiff's Counsel searched Google and Sharon Hospital's own website. (*Id.* ¶¶ 42, 71.) The undisputed facts related to Plaintiff's Counsel's investigation of Dr. Gallagher's employment status are as follows:

- Plaintiff's Counsel's relied on Sharon Hospital's website, which listed Dr. Gallagher as an Obstetrics & Gynecology doctor and contained a biographical page of Dr. Gallagher,[10] to assume that Dr. Gallagher was an agent of Sharon Hospital. (*Id.* ¶¶ 6, 40, 71.)

- Plaintiff's Counsel never called Sharon Hospital to inquire if Dr. Gallagher was, in fact, employed by Sharon Hospital. (Def.'s SMF ¶ 53.)

- Plaintiff's Counsel never corresponded with or called Dr. Gallagher to inquire into his affiliation with any entity—Primary Health Network, Sharon Hospital, or otherwise. (*Id.* ¶ 54.)

- Plaintiff's Counsel did not request billing records from Dr. Gallagher. (*Id.* ¶ 52.)

- Plaintiff's Counsel did not investigate or visit Primary Health Network's website prior to the removal of the action from state court to federal court. (Pl.'s CSMF ¶ 28.)

- Plaintiff's Counsel did not call Primary Health Network to ascertain its status as a federally deemed health care facility. (Def.'s SMF ¶ 50.)

---

[10] According to Plaintiff, the biographical page of Dr. Gallagher is no longer accessible on the Sharon Regional Health System. (Pl.'s CSMF ¶ 41.)

- Plaintiff's Counsel did not investigate the Health Resources and Services Administration (HRSA) database's website to inquire as to the federal status of Dr. Gallagher.[11] (Pl.'s CSMF ¶ 32.) However, the HRSA did not enable users to search by physician name during the relevant period in which the FTCA statute of limitations was running. (*Id.* ¶ 35.) But it did enable a search by entity, such as Primary Health Network. (*Id.* ¶ 36.)

- Plaintiff's Counsel did not investigate Dr. Gallagher or Primary Health Network on LEXIS or Westlaw "prior to the current discovery window," and it is not in Plaintiff's Counsel's "custom or practice" to conduct such a legal search of defendant doctors in medical malpractice cases. (*Id.* ¶¶ 57, 65.)

- Plaintiff's Counsel performed a Google search of both Sharon Hospital and Dr. Gallagher[12] but did not perform a Google search of Primary Health Network. (*Id.* ¶ 46.) In the course of that Google search on Dr. Gallagher, Plaintiff's Counsel found newspaper articles published in 2001 and 2002, respectively, and related to a jury award against Dr. Gallagher that precipitated him filing for bankruptcy. (*Id.* ¶ 43–44.)

The record does not reflect that there was any impediment to Plaintiff's Counsel carrying out any of these tasks, and none has been advanced to the Court.

---

[11] Plaintiff asserts that her Counsel previously filed suit on behalf of another client against Sharon Regional Health System and therefore knew that Sharon Regional Health System was not a "deemed" federal entity. (Pl.'s CSMF ¶¶ 33–34.)

[12] Plaintiff's Concise Statement of Material Facts, however, does not indicate when Plaintiff's Counsel performed those Google searches. (*Id.* ¶ 42.)

7

Apparently operating under the assumption that Dr. Gallagher was only an agent of Sharon Hospital, Plaintiff's Counsel proceeded to review all of the medical records he had obtained, and he consulted and obtained a medical expert, Dr. Michael Kreitzer, on matters related to the standard of care.[13] (*Id.* ¶¶ 67–68.) Plaintiff's Counsel asserts that, in reliance on Pennsylvania's Minors' Tolling Statute, he "deliberately waited to file suit in anticipation of acquiring additional knowledge regarding the severity and permanency of the [Plaintiff's] injuries," believing that was in the best interests of Plaintiff. (*Id.* ¶¶ 72, 75.)

Meanwhile, from 2009 to 2011, a framed copy of Primary Health Network's Mission Statement hung in the waiting room of each Primary Health Network office and stated: "The mission of the Primary Health Network, a Federally Qualified Health Center, is to provide quality primary care services and access to specialty care commensurate with the needs of the people in the communities we serve." (Def.'s SMF ¶¶ 12–13.) This mission statement, containing the phrase "a Federally Qualified Health Center," also appeared on Ms. Stewart's Sliding Fee Application, which she signed in 2010, and the mission statement was also on Primary Health Network's website. (*Id.* ¶¶ 14–16.) Several other aspects of Primary Health Network's website between 2009 and 2011 also indicated both its federal status and its affiliation with Dr. Gallagher. (*Id.* ¶¶ 18–19.)

Plaintiff's Counsel has only once prosecuted a case where the substitution of a "deemed" federal employee by the United States occurred. (*Id.* ¶ 48–50); *Iadanza v. Monongahela Valley Hosp.*, No. 2008-9652 (Washington Cty. Ct. Com. Pl.). There was no statute of limitations issue in that case nor were minors involved. (Pl.'s CSMF ¶ 50.)

With the benefit of the record developed by discovery, the Court analyzes whether equitable tolling is triggered in this case, and the Court concludes that it is not.

---

[13] Plaintiff included in the record a letter from Plaintiff's Counsel to Dr. Kreitzer dated March 24, 2011, within the FTCA statute of limitations, requesting Dr. Kreitzer's review of an ultrasound. (ECF No. 31-15.)

8

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (quoting Fed. R. Civ. P. 56(a) & (e)). To meet its burden, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). Moreover, a party's labelling or characterizing a fact as "disputed" does not make it so—the record evidence the opposing party points to must support the dispute of fact, whether through reasonable inference or otherwise. If the non-moving party's evidence merely is colorable or lacks sufficient probative force, summary judgment must be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

In other words, summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party. *See id.* at 250. "Where the record taken as a whole could not lead a reasonable trier of fact to find for the

9

nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587; *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).

In reviewing the record evidence, the court draws all reasonable inferences in favor of the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "The line between reasonable inferences and impermissible speculation is often 'thin,' *Fragale & Sons Beverage Co. v. Dill*, 760 F.2d 469, 474 (3d Cir. 1985), but nevertheless is critical because 'an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.'" *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) (quoting *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n. 12 (3d Cir. 1990)). Any inference must follow directly from admissible evidence. *See Anderson*, 477 U.S. at 255.

It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See id.*; *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004). Although summary judgment may be granted based on affidavits, conflicts of credibility should not be resolved on a motion for summary judgment unless the opponent's evidence is "too incredible to be believed by reasonable minds." *Losch v. Borough of Parkesburg.*, 736 F.2d 903, 909 (3d Cir. 1984) (quoting 6 Moore's Fed. Prac. ¶ 56.14(4)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48. "Where the defendant is the moving party, the initial burden is on the defendant to show that the plaintiff has failed to establish one or

more essential elements to his case." *See Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 589 (3d Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 323–24).

## III. Analysis

As stated above, Plaintiff's claim accrued on the date she was born, November 9, 2009, yet she filed her claim in state court well after the FTCA's two-year statute of limitations had passed. But, like at the motion to dismiss stage, Plaintiff argues that the FTCA's statute of limitations should be equitably tolled because she did not know and was prevented from discovering that Dr. Gallagher was a federal employee for FTCA purposes.[14]

Equitable tolling, where available, "can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has 'been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'" *Santos*, 559 F.3d at 197 (quoting *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999)).

In the Third Circuit, a plaintiff may face "sufficiently inequitable circumstances" that justify equitably tolling a statute of limitations in three situations: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Santos*, 559 F.3d at

---

[14] As explained in this Court's prior Opinion:
> When filing her claim in state court, Plaintiff relied on the Pennsylvania Minors' Tolling Statute, 42 Pa. C. S. § 5533(b)(1), which tolls the state's statute of limitations for minors' claims until the claimant reaches the age of majority. If Plaintiff had been correct in her belief that Dr. Gallagher was not a federal employee, her claim would have been timely under state law; however, state law tolling statutes do not apply to the FTCA's limitations period, and thus the Pennsylvania tolling statute alone cannot save Plaintiff's claim. *Santos*, 559 F.3d at 193 (citing *Zeleznik v. United States*, 770 F.2d 20, 22 (3d Cir. 1985); *Sexton v. United States*, 832 F.2d 629, 633 n.4 (D.C. Cir. 1987) (citing *Zeleznik*)). Accordingly, in the absence of equitable tolling, the FTCA would bar Plaintiff's claim as untimely.

(Op. at 3–4.)

11

197 (quoting *Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005)). Plaintiff asserts that the second situation is at issue here.

However, the burden for a plaintiff seeking to equitably toll a statute of limitations is a heavy one, as our Court of Appeals cautioned in *Santos*:

> But a plaintiff will not receive the benefit of equitable tolling unless she exercised due diligence in pursuing and preserving her claim. The principles of equitable tolling thus do not extend to "garden-variety claims of excusable neglect." The remedy of equitable tolling is extraordinary, and we extend it "only sparingly." It is especially appropriate to be restrictive with respect to extension of equitable tolling in cases involving the waiver of the sovereign immunity of the United States. The Supreme Court made that point clear when it indicated that inasmuch as the FTCA "waives the immunity of the United States, . . . in construing the [FTCA's] statute of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended," and the Court should not "assume the authority to narrow the waiver that Congress intended."

559 F.3d at 197–98 (citing *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 96 (1990); *Hedges*, 404 F.3d at 751; *United States v. Kubrick*, 444 U.S. 111, 117–19 (1979)) (internal citations omitted). Therefore, Plaintiff must demonstrate two things: that she was prevented "in some extraordinary way" from asserting her rights and that she exercised due diligence in pursuing and preserving her claim. *Menominee Indian Tribe v. United States*, 136 S. Ct. 750, 755 (2016).

Plaintiff argues that she was prevented from asserting her rights because of the difficulty in ascertaining Dr. Gallagher's status as a "deemed" federal employee. As noted in this Court's previous Opinion denying Defendant's motion to dismiss, *Santos ex rel. Beato v. United States*, 559 F.3d 189 (3d Cir. 2009), is instructive.

In *Santos*, the plaintiff was treated at a healthcare facility known as York Health, which appeared to be a private corporation, and nothing on its website (or other publicly available sources) indicated that the facility and its employees were federal employees covered by the FTCA, although the fact of its federal funding was revealed. *Id.* at 192. During the pre-suit

12

investigation, "Santos's counsel performed a public records search on York Health, corresponded with York Health, obtained Santos's medical records, visited the clinic, and reviewed pertinent records onsite." *Id.* at 191. "[P]ublicly available information did not reveal their federal status for malpractice purposes, though there was public information explaining that York Health received aid from, among numerous benefactors, the federal government, and the clinic did not appear to be a federal facility." *Id.* at 192. Santos's counsel filed suit five months after the FTCA statute of limitations had run. *Id.* at 206.

Our Court of Appeals concluded that Santos had indeed fallen into a "trap" created by the federal Department of Health & Human Services, which "is aware of the consequences of its failure to disclose the material facts of federal employment by doctors who might reasonably be viewed as private practitioners." *Id.* at 202–03 (quoting *Valdez v. United States*, 518 F.3d 173, 183 (2d Cir. 2008)). Our Court of Appeals concluded that this "trap" resulted in "Santos and her counsel [having] no reason to inquire as to the possible federal status of [her healthcare providers]." *Id.* at 202. Thus, Santos had satisfied her burden to show that she prevented "in some extraordinary way" from asserting her rights. *Id.* at 203. The Second Circuit, in a similar FTCA case, also concluded that equitable relief can be triggered when the United States is taking advantage of a statute of limitations trap of its own making. *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013).

Plaintiff argues that she that she was prevented "in some extraordinary way" from asserting her rights by the same "trap" identified in *Santos*. In *Santos*, the "trap" was the defendant treating facility's lack of transparency as to its own federal status. Here, there is no question that the treating facility, Sharon Hospital, is a private entity, which status Plaintiff's Counsel confidently (and correctly) presumed based on his prior litigation experience with Sharon Hospital. Thus, the "trap"

13

that Plaintiff (or really, her Counsel) fell into was the alleged lack of transparency as to Dr. Gallagher's true employer, which was not Sharon Hospital but Primary Health Network. The Court must determine whether Plaintiff was prevented "in some extraordinary way" from asserting rights under the FTCA when the federal status of Dr. Gallagher was not disclosed on the private treating hospital's own website and when only two pages of produced medical records identified his true employer. The Court concludes that the "trap" Plaintiff claims to have fallen into here does not amount to the requisite extraordinary level of difficulty of discernment so as to trigger such extraordinary relief, particularly since the record demonstrates the reality that more comprehensive, yet reasonable, due diligence would have prevented any such "trapping."

Plaintiff's Counsel asserts that Sharon Hospital, through its website and medical records, was the one hiding the ball with respect to Dr. Gallagher's status, but the record does not support this argument, and this argument does not support the application of equitable tolling. First, the emphasis on the "traps" in both *Santos* and *Phillips* were that they were laid by the Government itself, which most stood to benefit from the existence of expired FTCA claims. Sharon Hospital's webpage for Dr. Gallagher is hardly a trap laid by the Department of Health & Human Services and, unlike the case in *Santos*, it cannot be said to be the result of "the *Government's* failure to disclose." *Id.* at 202. *See also Zeleznik v. United States*, 770 F.2d 20, 24 (3d Cir. 1985) (affirming summary judgment in favor of government on FTCA statute of limitations grounds where plaintiff "possessed sufficient critical facts to investigate, and there was no active concealment by the [government].") There is no support in *Santos* for Plaintiff's implicit argument that a private hospital has a duty to convey the federal status of physicians practicing in its hospital.

Second, beyond considering the existence of Dr. Gallagher's biographical webpage on Sharon Hospital's website, Plaintiff's Counsel took no further steps to confirm Dr. Gallagher's

14

employment or association with Sharon Hospital or any other medical practice, hospital, or professional corporation. The real trap that Plaintiff's Counsel fell into was the assumption that a doctor who has a biographical page on a private healthcare facility's website (here, Sharon Hospital's website) cannot be employed by another facility or entity. Plaintiff's application of *Santos* in this case would essentially remove the burden on Plaintiff or her Counsel to investigate the employment status of an alleged tortfeasor, but the Court does not take such an expansive reading of *Santos*. The Court cannot conclude that it is a "trap" laid by the Government to acknowledge that a lawyer filing a medical malpractice suit against individuals and entities must make diligent investigations into the affiliations of *each* proposed defendant, especially given the reality that physicians (especially those performing deliveries in hospitals) can have hospital privileges at more than one hospital. "The burden is on the plaintiff to discover the employment status of the tort-feasor and to bring suit within the applicable limitations period." *Gould v. U. S. HHS*, 905 F.2d 738, 745 (4th Cir. 1990); *see Zeleznik v. United States*, 770 F.2d 20, 22 (3d Cir. 1985) ("[W]hen a person learns of his injury, he is on notice that there has been an invasion of his legal rights, and that he should determine whether another may be liable to him."). Indeed, this point was not lost on our Court of Appeals in *Santos*: "We reiterate that Santos correctly identified the allegedly negligent healthcare providers, *determined that they were employees of York Health*, and performed a public-records search on York Health." 559 F.3d at 203 (emphasis added). Thus, the situation here is not parallel to that in *Santos*. Plaintiff has failed to put forth evidence that she was prevented from discovering Dr. Gallagher's true employer, Primary Health Network, "due to sufficiently inequitable circumstances." *Santos*, 559 F.3d at 197.

The Court also declines to adopt Plaintiff's argument that her Counsel had no reason to investigate the affiliations of Dr. Gallagher because the events at issue took place within the walls

of a private hospital. (*See* ECF No. 30, at 8–9.) Such logic would impermissibly extend the limited waiver of immunity provided for under the FTCA beyond what Congress intended, as the applicability of the FTCA depends on the status of the physician, not simply the location of the alleged tort. *See Kubrick*, 444 U.S. at 418 (courts should not construe the FTCA's statute of limitation provision to extend the limited waiver of sovereign immunity beyond what Congress intended).

Third, two pages of the medical records timely produced to Plaintiff's Counsel indicated Dr. Gallagher's affiliation with Primary Health Network. These specific pages show Dr. Gallagher's progress notes and include notes from visits prior to Ms. Stewart's delivery at Sharon Hospital. Not only do the footers identify Primary Health Network, but they provide Primary Health Network's telephone number. When considering the question of whether the Plaintiff was prevented in any extraordinary way from asserting her rights, the Court cannot avoid the reality that had Plaintiff's Counsel called Primary Health Network, he would have discovered that Dr. Gallagher was one of its physicians. Plaintiff's argument that the two pages of medical records that reference Primary Health Network merely conveyed that Dr. Gallagher "may be an agent of another entity" and at times "was not wearing the hat of" Sharon Hospital, ECF No. 30, at 15, simply does not support a conclusion that "critical information, reasonable investigation notwithstanding, was undiscoverable." *Gould*, 905 F.2d at 745–46. "No impediment, other than plaintiff['s] inaction, shielded the physician['s] legal identity." *Id.* at 746.

The record is plain that Dr. Gallagher's status as an employee of Primary Health Network and not Sharon Hospital, and his status as a "deemed" federal employee status would have been, and in fact was, sufficiently reasonably discoverable to preclude application of the doctrine of equitable tolling. But the record also demonstrates that Primary Health Network was not "hiding

the ball" like York Health was in *Santos*. And Primary Health Network held itself out as a "federally qualified health center" via physical signs in its waiting rooms, notices on at least one of its signed patient forms, and notices on its website. Primary Health Network was also a searchable entity on HRSA's website.

The record also does not support a conclusion that Plaintiff was prevented in any "extraordinary way" from discovering Dr. Gallagher's true affiliations. *Menominee Indian Tribe*, 136 S. Ct. 750, 755 (2016). But even if she was, Plaintiff has failed to demonstrate the requisite due diligence to trigger relief under the doctrine of equitable tolling. Plaintiff argues that the events giving rise to the claim at issue here set the temporal focus of Plaintiff's Counsel's entire investigation. But an investigation into "what happened" does not definitively constrain a lawyer's duty to investigate the "by whom." In other words, for these purposes, reasonable due diligence at least means that Plaintiff's Counsel had an obligation to investigate Dr. Gallagher's employment status before relying on state tolling laws. And it was well-established in 2009 that the accrual date under the FTCA does not incorporate state law, and claims against a "deemed" federal employee, therefore, cannot rely on state tolling principles.[15]

Simply put, on the record here, discovering Dr. Gallagher's true employer was no tall task. For instance, the most direct way that Plaintiff's Counsel could have investigated Dr. Gallagher's status was to ask his client where she normally saw Dr. Gallagher for her pre-natal care. Plaintiff's Counsel could have also called the phone number associated with Primary Health Network

---

[15] It is established that for purposes of the FTCA, "federal law defines the limitations period and determines when the claim accrues." *Bagley v. United States*, 215 F. Supp. 3d 831, 834 (D. Neb. 2016) (citing *Reilly v. United States*, 513 F.2d 147 (8th Cir. 1975); *Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991); *Washington v. United States*, 769 F.2d 1436, 1437–38 (9th Cir. 1985)). *See also United States v. Kubrick*, 444 U.S. 111, 117 (1979) ("Section 2401 (b), the limitations provision involved here, is the balance struck by Congress in the context of tort claims against the Government; and we are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims."); *Miller v. Phila. Geriatric Ctr.*, 463 F.3d 266, 272 (3d Cir. 2006) (claim accrual under FTCA is determined under federal law).

(provided on the medical records that he requested). He also reasonably could have contacted Sharon Hospital to inquire as to its relationship with Dr. Gallagher. It ordinarily should not come as a surprise to a medical malpractice lawyer (plaintiff or defense) that an obstetric physician's relationship to a hospital may simply be as having admitting privileges[16] to deliver his patients' babies. And as the record here demonstrates, the location where a physician delivered a baby is not a reliable surrogate for the identity of that physician's employer or principal. Regardless of who Plaintiff chose to sue, for these purposes, a diligent investigation would have included determining who Dr. Gallagher's employer was. All this becomes especially true when an individual relies on state tolling laws to delay bringing suit.[17]

Although Plaintiff's Counsel's previous experience gave him good reason to know that *Sharon Hospital* was not a federal entity, the investigation with respect to ascertaining Dr. Gallagher's true employer for equitable tolling purposes fell short of due diligence in this case. Plaintiff's Counsel was reasonably charged with taking at least one more step to confirm Dr. Gallagher's correct employer or principle before relying on Pennsylvania's Minor Tolling Statute to toll Plaintiff's claim for nearly seven years.[18]

With respect to Plaintiff's Counsel's own experience with the FTCA, the reality is that Plaintiff's Counsel was litigating an FTCA case, the *Iadanza* case, very shortly after the *Santos v.*

---

[16] "The grant of hospital staff privileges, also known as admitting privileges, is required before a physician may admit or treat patients at that hospital." *Miller v. Ind. Hosp.*, 843 F.2d 139, 140 n.1 (3d Cir. 1988).

[17] The legal rule that Pennsylvania's Minor Tolling Statute did not apply to the FTCA was clearly established by our Court of Appeals in a 2009 precedential opinion (i.e. *Santos*) prior to the events giving rise to this case.

[18] Plaintiff cannot demonstrate due diligence on the basis that her Counsel performed a Google search of Dr. Gallagher and relied upon Dr. Gallagher's 2001 bankruptcy to assume that, in 2009, Dr. Gallagher was in private practice unrelated with another entity.

*United States* decision was issued on March 11, 2009.[19] *Santos* was *the* case in this Circuit for the intersection of the application of tolling doctrines under the FTCA in medical malpractice claims. Only a few months later in 2009, at Plaintiff's birth, the alleged negligence occurred. *Santos* alone may or may not be the "fire bell in the night for all plaintiffs' medical malpractice counsel," (Op., ECF No. 20, at 9), but, in light of the record facts here, its timing with respect to Plaintiff's Counsel's involvement in another FTCA case and the events giving rise to this case are too close in proximity to discount. Given that reality, Plaintiff Counsel's positions as to the interplay between the FTCA and state tolling laws (or at least Counsel's portrayal of such interplay as more akin to an obscure legal nuance) cannot justify equitable relief for Plaintiff.

Finally, the Court disagrees with Plaintiff that her Counsel's efforts here mirror the efforts of the plaintiff's counsel in *Santos*. There, "Santos's counsel performed a public records search on York Health, corresponded with York Health, obtained Santos's medical records, visited the clinic, and reviewed pertinent records onsite." 559 F.3d at 191. Plaintiff's Counsel here did not correspond with either Sharon Hospital or Dr. Gallagher, and he did not visit Dr. Gallagher's clinic, Primary Health Network.

After "carefully examin[ing] the panoply of actions and inactions" of Plaintiff and her counsel, Op. at 11, the Court concludes that, on the undisputed record here, Plaintiff cannot as a matter of law meet her burden to obtain the extraordinary remedy of equitable tolling. Her negligence claim against the United States is thus barred as untimely under the FTCA.[20]

---

[19] *Santos* was decided on March 11, 2009. In June 2009, the *Iadanza* case was removed to federal court on the basis that the defendant doctor was a deemed federal employee. *Iadanza v. Monongahela Valley Hosp.*, No. 09-cv-734, dkt. 1 (W.D. Pa.).

[20] The bottom line is that for better or worse, post-*Santos*, a plaintiff must demonstrate that she exercised the legally requisite level of due diligence in determining the federal status of a physician, which includes an investigation into the physician's employer, before she relies upon state tolling laws to bring her claim. The consequence of a failure to do this, as demonstrated here, can be severe, but at least post-*Santos*, in this Circuit, the task of preventing such consequence is rarely an "extraordinary" one, as the law considers that term. This is not to say that, in some cases, a

## IV. Conclusion

For the reasons stated in this Opinion, Defendant's Motion for Summary Judgment, ECF No. 25, is granted.

An appropriate Order will follow.

*[signature]*

Mark R. Hornak
Chief United States District Judge

Dated: April 29, 2019
cc: All counsel of record

---

plaintiff may be prevented in some extraordinary way from discovering that her treating physician is a "deemed" federal employee for purposes of the FTCA despite due diligence such that the plaintiff would be entitled to equitable tolling, but this is not that case.